the case. Please identify yourself before the court. My name is Daniel Mellon. I'm with the State Appellate Defender's Office, and I represent the defendant, Mr. Gonzalez. Okay, and are you going to reserve some time for rebuttal? Yes, please, Your Honor. How much time will you want to reserve? Two minutes, if it pleases the court. Okay. And for the state? Two minutes. Darren, is there anyone present for the state? This is Smith. We can't hear you. Hello? Can you hear me now? Yes, we can hear you. Okay. Sorry, I apologize. Good morning, Your Honors. My name is Margaret Smith. I'm an Assistant State's Attorney on behalf of the people of the state of Illinois. Okay, let's proceed. May it please the court. Again, my name is Daniel Mellon. I'm with the State Appellate Defender's Office, and I represent Mr. Gonzalez. I just plan on focusing today on the first issue, the sufficiency argument, but we'll answer any questions the court might have, of course. As to the sufficiency argument, I think the narrow question here is whether my client's to defend himself the way he did was objectively reasonable. The jury in this case found that my client subjectively believed that he needed to use the force that he did to defend himself and his friends, but the jury, of course, concluded that his decision was not objectively reasonable in finding him guilty of second-degree murder. We are asking this court to hold that if there ever is a case where an individual was justified in using the force that he did, it was this one. Your Honors, my client was sitting alone outside of a bar on a street corner when two individuals approached him and asked him what gang he was in and basically started to pick a fight. One of my client's friends came out from a nearby bar when he saw what was going on and asked those individuals to leave, to leave my client alone. The individuals did leave and then soon returned with seven or eight other guys, surrounded my client and his two friends, and started throwing gang signs, grabbing their waistbands as if they had guns. The state's own witnesses in this case testified that one of these individuals, Mr. Jason Kabata, purposefully pulled an object out of his pocket or out of his waistband which was a cell phone, but he pointed it as if he had a handgun. There's a video exhibit that's included in the record that shows everything that occurred. I would direct the court, I think it's exhibit 3A and more, the second video that's included on the exhibit, it shows that everyone indeed thought that Mr. Kabata had pulled the gun on the video, you know, and as corroborated by the witness testimony, people flinched when he pointed this object at Alejandro Castro, one of my client's friends, who was with him that night. And then immediately after this occurred, Miguel Delgado, the decedent in this case, punched Mr. Castro in the head. And it was not until my client, after seeing Kabata pull what he thought was a gun, then saw Delgado punch Castro in the head that he made the split-second decision to fire his gun in defense of himself and his friends. It is, I mean, we can't dispute it's a tragedy that Mr. Delgado... Well, didn't he go get a gun from his car or something like that? My client had a gun in his pocket. Mm-hmm. Did he have it the whole time? Yes, Your Honor. Yes, yes, he had a gun in his pocket, but he waited until... He pulled it once, he saw Mr. Kabata pull what he thought, my client thought was a gun, and he waited until he actually saw a physical attack of one of the surrounding him, and an additional witness testified that they were all grabbing towards their midsections and their waistbands and indicating that they were all armed. So my client made a split-second decision in the face of a deadly threat to himself and his friends, and he had the right to use the force that he did with the aggression and the threats that they in that moment was not objectively reasonable. We are respectfully asking this court to hold otherwise and reverse our client's decision for second-degree murder. In addition, we are asking this court to reverse his aggravated discharge convictions. Our position that Mr. Gonzalez was justified in firing his weapon in order to get all the individuals to disperse followed the initial shooting. Again, my client was surrounded by individuals who were acting as if they were armed and willing to shoot him and attack them, and once the opposing individuals escalated this situation in the way that they did, it's our position it was completely reasonable to have a continued concern about his own safety and the safety of his friends, particularly after my client was forced to respond to Mr. Delgado's attacks. You can see on the video, he does fire well above the heads of all the individuals, and we maintain the actions were lawful because he feared, understandably, that they could turn around at any moment and shoot at him. This was the same individual who had already indicated he had a gun, so therefore, we would respectfully ask this court to reverse his convictions for both second-degree murder and aggravated discharge of a firearm because he had a right to defend himself and his friends. If there was ever a case where the use of force was justified, I think the video shows and the witness testimony corroborated that under the principles of self-defense, our client was justified to do what he did. If this court has any questions, I would be happy to answer, of course. Okay, anyone have any questions? I have one question. So, all this evidence that you've indicated was available and was presented to the jury, yet you're asking us to overturn the jury's verdict. They obviously saw the video, right, they listened to the testimony, and at the same time, they didn't accept self-defense defense. Yes, your honor, but the state had a burden to disprove every element of self-defense beyond a reasonable doubt, and this court, of course, and we even in a, considering the evidence most favorable to the state, we would just ask this court to review the video and make a determination, notwithstanding the jury's verdict, that the state failed to prove beyond a reasonable doubt that my client's actions were not objectively reasonable. Counsel, what are you going to do with the Harmon case, 2015, first 12, 2, 3, 4, 5, paragraph 61, to shoot someone in response to a punch is not reasonable self-defense or defense of others justifying such use of deadly force. What are you going to do with that case? I would argue that this is a case where it wasn't just a Well, there was a punch, but it was a punch after the members of the group of which Mr. Delgado belonged were indicating that they were armed, that Mr. Cabada purposefully indicated that he was trying to pull a gun. I really think there's no dispute, there can be no dispute that that's what he was trying to do, and that all the other individuals were also indicating they were. So this was while it was a punch in that split second moment, my client very reasonably believed that that individual Mr. Delgado could have been armed and it could have been more than a punch because of the actions immediately preceding it, where individuals in that group were pulling objects to act like they had guns. So it was more than a punch, this was a response to being threatened with guns. But there was only one gun and that was your client's. Well, Mr. Cabada pulled a cell phone and pointed it directly at my client's friends. And put it back in his pocket. He put it back in his pocket and my client didn't respond to that, he waited till there was actual force. And again, it's a split second decision, my client is facing an individual who pulls a gun. A cell phone and a punch, no guns, correct? Well, I believe we cite a case in our brief that just because no weapons are recovered doesn't mean you're not justified in self-defense, particularly in cases where individuals act as if they had guns. And that's exactly what occurred here. The individuals, the whole group was acting like as if they had weapons. What case was that? I believe that was White that we cite in our brief. And again, I just can't really, I don't think there's any dispute that Mr. Cabada acted as if he had a gun. And then there's witness testimony that all the individuals were acting as if they had a gun. And it was perfectly reasonable for my client to believe that Mr. Delgado had a gun and was punching my client and was going to attack him with a gun. Okay, let's hear from the state. Thank you, Your Honor. Good morning, Your Honor. May it please the court. When the evidence is viewed in the light most favorable to the prosecution, do people prove defendant guilty of second-degree murder and two counts of aggravated discharge of a firearm? Where the evidence established the defendant shot and killed Miguel Delgado and shot in the direction of Jason Cabada and Ricardo Morales, and he did not act in self-defense. In finding the defendant guilty of second-degree murder, the jury found that the people established the elements of first-degree murder and found defendant guilty of the lesser mitigated offense of second-degree murder. And they did so because they found defendant's evidence of self-defense was not sufficient. Contrary to what defense is arguing, the people did not bear a burden in regard to the self-defense claim to disprove every element of self-defense. There are six elements that the defendant is required to establish some evidence of, each of those. And then if the trier fact determines that the prosecution has negated any one, not all six, as counsel argued, any one of those elements of self-defense beyond a reasonable doubt, then the people have met their burden. And here, that's what happened. The jury came back and didn't acquit defendant of first-degree murder, which would have meant that they thought he met all of the elements and the people did not negate any one of the six elements of self-defense. Rather, the jury found defendant guilty of the lesser mitigated offense of second-degree murder, which means the jury found defendant's evidence of self-defense was not sufficient. Also, contrary to defendant's argument, we don't know, there's no finding, we don't have any things explicit telling us which of the six elements of self-defense the jury thought the people negated. And there is case law, Jeffrey's, which is cited throughout both briefs, explicitly says that the people do not have to, only have to negate one of the six elements. It can be any one of the six elements, and it does not have to be that the defendant's beliefs were objectively reasonable. People don't have to disprove that particular element. It can be any one of the six elements. And as we argued in our brief, the people presented evidence that negated defendant's evidence that defendant was not the aggressor, but also that the danger of harm was imminent. Defendant seems to say or argues that the people only, the jury only failed, excuse me, the jury in finding second-degree murder found that defendant only failed to prove his belief in self-defense was unreasonable. There's no, nothing in the record and no law that supports that statement. All we know is that the jury found that the defendant, his evidence of self-defense was not sufficient, which means under Jeffrey's that they found that the people negated one, at least one of the six elements of self-defense. And that after finding that the people negated at least one element of self-defense only then could the trier of fact, could the jury make a determination of second-degree murder. So we don't know which or how many of the elements of self-defense that the jury believed that the defense didn't adequately prove, or excuse me, that the people negated. The proof, the record reflects that defendant testified, and this is regarding the element of the danger of imminent harm. Defendant's own testimony was that Cabada pointed an object he thought was a gun at Castro. Defendant also testified, however, that Cabada immediately put the object back in his pocket. Then defendant reacted not by pulling his gun on Castro after he thought Castro pulled a gun, rather defendant testified that he actually stepped toward Cabada because he wanted to get a view of Cabada and the object he thought was a gun. So instead of pulling out his gun in self-defense when he actually saw Cabada with the gun in his hand, he waited until Cabada put his gun back in the pocket, which defendant said he did immediately, and then stepped toward him. Also when after, excuse me, after Cabada put the gun back in his pocket and defendant stepped toward Cabada, then that is when Delgado hit Castro with his fist, and then defendant testified that is when he then shot Delgado, killing him, and then he turned and shot at Cabada and Morales as they were running away. That's defendant's testimony. So defendant testifies that Cabada had an object he thought was a gun, put it away immediately. Defendant reacts not by pulling out his gun in toward Cabada after Cabada has already put the object back in his pocket, then when Delgado hits Castro with a fist, no gun in sight, that is when defendant turns and shoots, excuse me, shoots Delgado, and then as Cabada and Morales are fleeing, he shoots at them. He's shooting at people who are fleeing from the scene. There's no threat there, contrary to defendant's testimony that he thought they might turn around in defendant's argument. The jury heard all of that. The jury did not believe that, the jury believed that the people negated the, we believe there's a sufficient evidence that the jury found that the people and also contrary to defendant's argument, there was testimony that defendant was the initial aggressor. Cabada testified that was the case and Morales also testified to that. Cabada said that he was sitting there when defendant and his friends approached them, him asking what gang he was in, throwing gang signs, and Morales testified that defendant said gang love folks killer. So in finding defendant guilty of second degree murder, the jury found defendant's evidence of self-defense was not sufficient. We do not know which particular of the six elements, which one or more that the jury found the people negated, and the case that defendant cites, white, is distinguishable. The people note that that case was decided in 1980, and that was before Illinois adopted the standard of viewing the evidence in the light most favorable of the prosecution, the Jackson standard and Collins. So in the white case, there was no deference to the trier of fact, and the court applied to de novo review and retried the evidence. But also in that case, there was a prior history of physical violence between the defendant and the victim. And in that case, the person defendant was shot at, came at him with a weapon, but also had done so previously and hurt defendant, and repeatedly came at defendant in the instance where defendant resulting in the case before us. So here, there's no prior animosity between defendant and Miguel Dugato, Jason Cabada, or Ricardo Morales. And defendant shot Miguel after he used his fist on Castro. There was no weapon that would require the use of a gun and shooting anyone. Excuse me. So in regard to the charges of aggravated discharge of a firearm, the people would just indicate that there was no gun in sight, according even to just defendant's own testimony when he shot in the direction of Cabada and Morales as they were running away. I have no more, nothing else, I believe I need to say if anyone has any questions on the issue of sufficiency of the evidence. Are there any questions by any members of the panel? Well, I have one question in regards to the cell phone. So there was testimony, it appears there was some testimony that not only the defendant, but others present when Cabada pulled out the cell phone, they all jumped back as a fear that they thought it was a gun. Wasn't there evidence that other people also attributed that cell phone to at the moment to be a weapon and intimate fear of being discharged? Yes, Your Honor. Excuse me. Yes, Your Honor. There was testimony by the defense witnesses that that's what they thought. Also Castro who testified for the people that initially they jumped back. But as defendant says, defendant and Cabada both defendant's own testimony is that after he initially jumped back, after Cabada pulled out the cell phone, he instead of pulling out his gun to protect himself, he actually, defendant testifies after Cabada put the object back into his pocket. That is when defendant then pulled out his gun. So while the individuals, while defendant and others may have initially thought that the cell phone might've been a gun, their reaction according to defendant's own testimony and their testimony was that they then stepped toward Cabada. Now, normally you don't step toward someone if you think they have a gun. And defendant's own testimony was that instead of pulling out his gun in self-defense at that moment, he waited until Jason Cabada put the object back in his pocket. And then after Miguel Delgado hit Castro in the head with his fist, that's when defendant pulled out his gun. So there was no gun in sight. Jason Cabada didn't have anything in his hand. And it was also after Delgado hit Castro with his fist. There was no object that appeared to be a gun out in view at the moment that defendant pulled his gun and shot Miguel Delgado. And then he waited when everyone was running away and shot at Cabada and Morales as they were running away. So at the time defendant shot his gun, all the times defendant shot his gun, there was no object that he believed was a gun present out in the open. That's what the evidence shows. Any further questions? Nothing. All right, let's hear the rebuttal. Thank you very much. Just to the point that my client waited instead of pulling out the gun in immediate response to what my client did. He waited until he felt he needed to pull his gun until actual force was used. He saw his friend get hit in the head by someone he believed had a gun, but who was among a group of seven or eight individuals who all indicated they had a gun. I don't believe the fact that he waited until force was used to make the decision to respond renders his decision reasonable as counsel suggests, as the state suggests. I think it's, on the other hand, it shows even further that it was reasonable. He was waiting until his hand was forced and that's what he did. As to the testimony that my client was the initial aggressor, I believe that was completely incredible. That testimony comes from two gang members who had pending gun charges at the time of trial. There was absolutely no evidence that at the time of this incident that my client was a member of a gang or had any, he had a minor offense pending. And finally, as to the state's burden in this case, they had the burden to disprove beyond a reasonable doubt self-defense. As to the elements of the self-defense, I believe the only reasonable interpretation of the jury's verdict is that they did not believe his use of force was objectively reasonable. They found him guilty of second-degree murder because they agreed he subjectively believed he needed to defend himself. All the elements in the record, all the other additional elements are easily proven in the record. Force was threatened. You see him punch my client's friend in the head. Again, my client was not the aggressor. Any evidence that my client was came from these incredible gang members who were offering self-serving testimony because they were the instigators in this incident. The harm was imminent. He saw a gun. The threatened, they had no, this group of individuals had no lawful reason to be attacking my client and his friends. And this court, again, I believe doesn't need to rubber stamp the jury's verdict. It's well in this court's power to reverse the jury's finding that my client's beliefs were not objectively reasonable. And we would ask this court to do so. Any further questions? Okay, well, we want to thank both lawyers. I think your presentations were excellent and shortly you'll have an order or an opinion. And the court will be adjourned until the next case is called.